IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STS REFILLS, LLC, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) CIVIL ACTION NO. 3:10-CV-43 <br> ) JUDGE KIM R. GIBSON |
| RIVERS PRINTING SOLUTIONS, INC., <br> THOMAS E. RIVERS, and <br> CATHY RIVERS, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER OF COURT

GIBSON, J.

I. SYNOPSIS

This matter comes before the Court on Plaintiff STS Refills, LLC's Motion for Summary Judgment (Doc. No. 20) pursuant to Federal Rule of Civil Procedure 56. Plaintiff asks this Court for an order compelling Rivers Printing Solutions, Inc., Thomas E. Rivers, and Cathy Rivers to arbitrate disputes related to the alleged breach of two agreements, allegedly between STS Refills, Inc., Rivers Printing Solutions, Inc., Thomas E. Rivers, and Cathy Rivers. (Doc. No. 20 at 2; Doc. No. 1 at 1.) For the reasons that follow, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

II. JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[1] Venue is proper in this case pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this

---

[1] Defendants acknowledge that complete diversity exists, however, Defendants deny that the amount in controversy requirement is met. Although Plaintiff's requested relief is limited to an order compelling arbitration, "the amount in controversy in a petition to compel arbitration . . . is determined by the underlying cause of action that would be

action occurred in this district. However, in light of Plaintiff's assertion that venue is proper pursuant to 9 U.S.C. § 4 and the terms of the agreements (see Doc. No. 1 at 3) and Defendants' assertions that venue is improper in this district (see Doc. No. 7; Doc. No. 18 at 1-2), the Court finds that the issue of venue merits a brief discussion.

Plaintiff states in its complaint that venue in this Court is appropriate pursuant to 9 U.S.C. § 4. (See Doc. No. 1 at 3.) Section 4 of the Federal Arbitration Act (hereinafter the "FAA"), codified at 9 U.S.C. § 1 *et. seq.*, has indeed been interpreted to contain a venue provision.[2] See, e.g., *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974); *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1052-52 (10th Cir. 2006) (citing *Econo-Car Int'l*, 499 F.2d at 1394); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995); *Argonaut Ins. Co. v. Century Indem. Co.*, No. 05-5355, 2006 U.S. Dist. LEXIS 60765, at *8-9 (E.D. Pa. Aug. 5, 2006). While some Courts have suggested that section 4 might be a restrictive venue provision that controls over general venue statutes, see *Image Software, Inc.*, 459 F.3d at 1054, courts in this Circuit have not, see, e.g., *Econo-Car Int'l*, 499 F.2d at 2394 (noting that, because a district court may not order arbitration outside its district pursuant to the text of 9 U.S.C. § 4, a restrictive reading section 4's language permitting a

---

arbitrated." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 2005). Because Plaintiff has plead that the amount in controversy in the underlying cause of action will exceed $75,000 (Doc. No. 1 at 3) and it is not clear "to a legal certainty that the claim is really for less than the jurisdictional amount," *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961), the amount in controversy requirement is met and diversity jurisdiction exists.

[2] 9 U.S.C. § 4 states:
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 [28 USCS §§ 1 et seq.], in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed . . . .

The second portion of this statutory provision, which states that arbitration "shall be within the district in which the petition for an order directing such arbitration is filed" is relevant to venue.

2

party to request an order "directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement" might prevent a district court from ordering arbitration even where venue is otherwise proper); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877-79 (3d Cir. 2005); *Argonaut Ins. Co.*, 2006 U.S. Dist. LEXIS 60765, at *8-9 (relying on the United States Supreme Court's opinion in *Cortez Byrd Chips, Inc. v. Bill Harbet Constr. Co.*, 529 U.S. 193 (2000) in holding that section 4 of the FAA does not foreclose the general venue statute of 28 U.S.C. § 1391). Indeed, in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877-79 (3d Cir. 2005), the Third Circuit's decision to transfer a matter under 28 U.S.C. § 1404(a) demonstrated that a valid forum selection clause in an arbitration agreement selecting a location in a particular district as the forum for arbitration does not foreclose the possibility that venue will be proper in another judicial district. There, Plaintiffs brought an action in the Eastern District of Pennsylvania seeking to compel arbitration pursuant to an agreement that selected a county in the Middle District of Pennsylvania as the forum for arbitration. *Id.* at 875. 881. After concluding that transfer to the Middle District was the appropriate course of action, the Court inquired into the proper statutory basis for transfer. *Id.* at 877-79. The Court held that the action should be transferred pursuant to 28 U.S.C. § 1404(a), which permits a district court to transfer a civil action from one proper venue to another proper venue, rather than 28 U.S.C. § 1406(a), which permits a district court to transfer a civil action that has been brought in an improper forum to a forum where venue is proper. *Jumara*, 55 F.3d at 877-79. The Court so held because, notwithstanding the forum selection clause selecting the Middle District as the forum for arbitration, venue was also proper in the Eastern District under 28 U.S.C. § 1391. *Id.* at 878-79. See also, *Lester v. Gene Express, Inc.*, No. 09-0403, 2009 U.S. Dist. LEXIS 105029, at *12-13 (D. N.J. Nov. 10, 2009) (same). Thus, notwithstanding the forum selection clauses in the

3

Agreements at issue in this case,[3] venue is proper in this district under 28 U.S.C. § 1391(a)(2) because Plaintiff is a Pennsylvania Limited Liability Company with its principal place of business in this district (see Doc. No. 1 at 3; Doc. No. 18 at 1) and a substantial part of the events or omissions giving rise to this claim occurred in this district.

## III. FACTUAL AND PROCEDURAL BACKGROUND

On February 10, 2010, STS Refills, LLC, (hereinafter "STS"), a franchisor of master franchisor Cartridge World North America, LLC (hereinafter "Cartridge World"), brought suit in this Court to compel Defendants, Rivers Printing Solutions, Inc. (hereinafter "Rivers Printing"), Thomas E. Rivers, and Cathy Rivers, franchisees, to arbitrate disputes stemming from two contractual franchise agreements. (Doc. No. 1 at 1, 3.) Although similar in many respects, the two agreements contain different choice of law provisions and raise different legal issues, and therefore will be discussed separately in this memorandum.

The first agreement, dated February 7, 2005, was entered into by Cartridge World and Rivers Printing, a North Carolina Corporation with its principal place of business in Wilmington, North Carolina. (See Doc. No. 18 at 1; Doc No. 22 at 1; Doc. No. 24 at 1.) The Agreement (hereinafter the "Wilmington Agreement") granted Rivers Printing a franchise to operate a Cartridge World retail store in Wilmington, North Carolina (hereinafter the "Wilmington franchise location"). (See Doc. No. 22 at 1; Doc. No. 24 at 1; see generally Doc. No. 1-4; Doc. No. 1-5; Doc. No. 1-6.) Thomas E. Rivers and Cathy Rivers personally guaranteed the Wilmington Agreement. (Doc. No. 24 at 2.) On March 30, 2006, the Wilmington Agreement was allegedly assigned by Cartridge World to Plaintiff, STS, a Pennsylvania Limited Liability

---

[3] Previously, this Court found that venue was proper in this forum pursuant to the terms of the arbitration agreement. (See Doc. No. 17 at 4.) Upon further consideration, and without revisiting the question of venue pursuant to the terms of the arbitration agreement, the Court now finds that 28 U.S.C. § 1391(a)(2) is a more appropriate ground upon which to hold that venue is proper in the Western District of Pennsylvania.

4

Company with its principal place of business in Altoona, Pennsylvania (see Doc. No. 7-3; Doc. No. 22 at 1), after which date Rivers Printing and STS engaged in business pursuant to the Wilmington Agreement (see Doc. No. 22 at 1; Doc. No. 24 at 1). The assignment purports to transfer the Wilmington Agreement in full, with assignee accepting all rights and agreeing to assume, perform, and observe "all of the terms, provisions and conditions that are on the part of the Assignor to be performed and observed under the terms of the Franchise Agreement . . . ." (Doc. No. 7-3.) As further discussed below, Defendants challenge the validity of this assignment. (See Doc. No. 24 at 1, 3; Doc. No. 25.)

The Wilmington Agreement contains a choice of law clause and an arbitration clause. (See Doc. No. 1-5 at 43-50.) The choice of law clause provides, in relevant part:

> Therefore, you and we . . . agree that, except with respect to the applicability of the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. and the effect of federal pre-emption of state law by such Act, and except to the extent governed by the United States Trademark Act and other federal laws and as otherwise expressly provided in this Agreement, this Agreement and all other matters, including, but not limited to respective rights and obligations, concerning you and us, will be governed by, and construed and enforced in accordance with, the laws of North Carolina.

(Doc. No. 1-5 at 49.) The arbitration clause, in addition to providing for disputes to be resolved through ADR and arbitration, contains provisions on both the scope of the disputes to be arbitrated and the location of arbitration. (See Doc. No. 1-5 at 43-44.) Regarding the disputes to be arbitrated, the Agreement provides:

> Any litigation, claim, dispute, suit, action, controversy, or proceeding of any type whatsoever including any claim for equitable relief and/or where you are acting as a "private attorney general," suing pursuant to a statutory claim or otherwise, between or involving you and us on whatever theory and/or facts based, and whether or not arising out of this Agreement, ("Claim") will be processed in the following manner, you and we each expressly waiving all rights to any court proceeding, except as expressly provided below at Section 19.1 H.

(Doc. No. 1-5 at 43.) Regarding the location of arbitration, the Agreement provides:

5

> Any mediation/arbitration (and any appeal) will be conducted exclusively at neutral location [sic] in the county in which our then current headquarters is located, which may change from time to time, and be attended by you and us, and/or designees authorized to make binding commitments on each of our respective behalfs; provided that if any court determines that this provision is unenforceable for any reason, mediation/arbitration (and any appeal) will be conducted at a location near your unit.

(Doc. No. 1-5 at 44.)

The second agreement, dated November, 14, 2007, was entered into by STS and Rivers Printing. (See Doc. No. 22 at 2; Doc. No. 24 at 2.) The Agreement (hereinafter the "Belleville Agreement") granted Rivers Printing a franchise to operate a Cartridge World retail store in Belleville, North Carolina (hereinafter the "Belleville franchise location"). (See Doc No. 22 at 2; Doc. No. 24 at 2; see generally Doc. No. 1-7; Doc. No. 1-8; Doc. No. 1-9.) Plaintiff contends, but Defendants dispute, that Thomas E. Rivers and Cathy Rivers personally guaranteed the Belleville Agreement. (See Doc. No. 22 at 2; Doc. No. 24 at 2.) Like the Wilmington Agreement, the Belleville Agreement also contains a choice of law clause and an arbitration clause. (See Doc. No. 1-8 at 40-48.) The choice of law provision in the Belleville Agreement is identical to that in the Wilmington Agreement with the exception that is selects Pennsylvania law as the law to govern all matters, rights, and obligations under the Belleville Agreement. (Compare Doc. No. 1-8 at 47 with Doc. No. 1-5 at 49.) The excerpted portions of the arbitration clause of the Wilmington Agreement are identical in all material ways to that of Belleville Agreement with two exceptions. (Compare Doc. No. 1-5 at 43 with Doc. No. 1-8 at 41 and Doc. No. 1-5 at 44 with Doc. No. 1-8 at 42.) First, when addressing the disputes to be arbitrated, the emphasis beneath the words "of any type whatsoever" and "any" that appears in the Wilmington Agreement is omitted in the Belleville Agreement; and second, when addressing the location of arbitration, the Belleville Agreement replaces the words "in the county in which our then current

headquarters is located" that appear in the Wilmington Agreement with the words "in the county for our then-current principal business address."[4] (Compare Doc. No. 1-5 at 43 with Doc. No. 1-8 at 41 and Doc. No. 1-5 at 44 with Doc. No. 1-8 at 42.)

On April 20, 2010, Defendants moved to dismiss this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) (the "Motion to Dismiss"). (Doc. No. 7.) This Court denied that motion through a Memorandum and Order dated March 29, 2011. (Doc. No. 17.) Defendants submitted an Answer entitled Answer and Affirmative Defenses to Complaint in the Nature of a Petition to Compel Arbitration (the "Answer") (Doc. No. 18) on April 12, 2011. On January 5, 2012, Plaintiff filed the instant motion for summary judgment. (Doc. No. 20.) In support of the motion, Plaintiff contemporaneously filed a brief (Doc. No. 21) and a concise statement of material facts (the "CSMF") (Doc. No. 22) with an appendix of supporting exhibits (Doc. No. 22-1; Doc. No. 22-2; Doc. No. 22-3; Doc. No. 22-4), as required by the Local Rules of the United States District Court for the Western District of Pennsylvania (the "Local Rules"). Defendants filed a Responsive Concise Statement entitled "Reply and New Matter to Concise Statement of Material Facts" (the "Responsive Concise Statement") (Doc. No. 24) on February 3, 2012, as required by Local Rule 56.C.1. In support of their Responsive Concise Statement, Defendants contemporaneously filed a Brief in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 25) with supporting exhibits (the "Brief in Opposition"), as required by Local Rule 56.C.2-3. (Doc. No. 25-1; Doc. No. 25-2; Doc. No. 25-3.)

## IV. STANDARD OF REVIEW

"Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the

---

[4] It is noted that both STS's principal business address and headquarters are located in Altoona, Blair County, Pennsylvania. (See Doc. No. 1 at 2; Doc. No. 9 at 3.)

7

moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56 (a).[5] Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal citations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see also *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue" (internal quotation marks omitted)).

## V. DISCUSSION

Plaintiff contends that the Court should grant summary judgment against Defendants as to both contracts because (1) both the Wilmington Agreement and the Belleville Agreement contain an agreement to arbitrate disputes and (2) the issues in dispute are within the scope of the arbitration agreements. (See Doc. No. 20 at 1-2; Doc. No. 21 at 2; Doc. No. 22 at 2.)

---

[5] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

8

Defendants disagree. Defendants contend that Cartridge World's assignment of the Wilmington Agreement to STS contravened the terms of the Wilmington Agreement, rendering the assignment void (see Doc. No. 24 at 1) and therefore that STS "lacks standing to enforce the [Wilmington Agreement]," (see Doc. No. 24 at 3). Additionally, Defendants contend a personal guaranty of Thomas E. Rivers and Cathy Rivers did not accompany the Belleville Agreement. (Doc. No. 24 at 2.)

In response, Plaintiff alleges that this Court "specifically rejected" Defendants' argument that the assignment of the Wilmington Agreement was not effective in this Court's March 29, 2011 Memorandum and Order (Doc. No. 17) denying Defendants' Motion to Dismiss for Improper Venue (Doc. No. 7). Further, Plaintiff appears to contend that Defendants should be estopped from challenging the validity of the assignment through its assertion that Defendants did not object to the assignment at the time the Agreement was allegedly assigned and that Defendants continued to operate and conducted business with STS pursuant to the terms in the Wilmington Agreement after the alleged assignment. (See Doc. No. 21 at 1; Doc. No. 22 at 1.) The Court will address each of these issues in turn. Because each Agreement raises different factual and legal issues, in addressing these issues, the Court will discuss the Wilmington and Belleville Agreements separately, beginning with the Wilmington Agreement.

### A. The Wilmington Agreement

Prior to compelling arbitration pursuant to the FAA, a court must determine that "(1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. Pa. 2009). Defendants admit that the Wilmington Agreement contains an arbitration clause. (See Doc. No. 24 at 2). Defendants further do not specifically challenge Plaintiff's contention

9

that the disputes at issue fall within the scope of the arbitration clause. (See Doc. No. 24; Doc. No. 25).[6] However, Defendants challenge a more preliminary matter; Defendants deny the existence of any agreement between STS and the Defendants relating to the Wilmington franchise location. Specifically, Defendants contend that the assignment to STS violated the terms of the Wilmington Agreement and is therefore void. (See Doc. No. 24 at 1; Doc. No. 25 at 2, 3.) Although Defendants assert that the assignment's failure to satisfy the terms of the Wilmington Agreement renders the assignment invalid and void (see Doc. No. 24 at 1; Doc. No. 25 at 2, 3), Defendants cite no caselaw for this proposition (see Doc. No. 25 at 3). As stated above, the parties have selected North Carolina law to govern the Wilmington Agreement. (Doc. No. 1-5 at 49.) Therefore, before inquiring into the existence of a genuine dispute as to a material fact with respect to the existence of an agreement between STS and Defendants, as a preliminary matter, this Court must determine the effect of an assignment that occurs in violation of the terms of a written agreement under North Carolina law.

Courts have taken differing approaches to anti-assignment clauses. Depending on the language used, courts have found that contractual clauses restricting or prohibiting assignment either render the assignment void or result in a valid assignment and simply entitle the obligor to damages for breach of contract. *Dean v. Symetra Assigned Benefits Serv. Co. (In re Application for Approval of Structured Settlement Payment Rights)*, 136 P.3d 765, 775 (Wash. Ct. App. 2006) (discussing different approaches used in addressing anti-assignment clauses in structured

---

[6] Defendants deny any attempt on behalf of Plaintiff to interpret, construe, or modify the terms of the arbitration clause. However, as discussed more thoroughly with respect to the Belleville Agreement, Defendants do not advance any specific arguments contending or explaining why the disputes at issue fall outside the scope of the arbitration clause in the Wilmington Agreement. For a further discussion regarding this matter, see section V.B below, as the discussion therein relating to the Belleville agreement is also true with respect to the Wilmington Agreement.

10

settlement agreements, applying North Carolina law). For example, the Restatement (Second) of Contracts § 322 (1981) provides:

> (1) Unless the circumstances indicate the contrary, a contract term prohibiting assignment of "the contract" bars only the delegation to an assignee of the performance by the assignor of a duty or condition.
>
> (2) A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,
>
> . . .
>
> (b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective . . . .

While under the latter approach the assignment to STS would be effective and, irrespective of a contractual term restricting or prohibiting assignment, as a party to the agreement STS could enforce an arbitration agreement contained therein, cf. *CTF Hotel Holdings v. Marriott Int'l*, 381 F.3d 131, 137 (3d Cir. 2004); *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 561 (M.D. N.C. 2004) (applying North Carolina law to the arbitration agreement), under the former approach STS may be barred from enforcing the arbitration clause absent a common law principle creating an exception to the general rule that "one who is not a party to an arbitration agreement lacks standing to compel arbitration," *Collie*, 345 F. Supp. 2d at 561; see also *Cost Bros. Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985).

Under North Carolina Law, contract rights are assignable unless prohibited by statute, public policy or the terms of the contract, or the contract is one for personal services or is entered into out of personal confidence in the other party to the contract. *Kraft Foodservice v. Hardee*, 457 S.E.2d 596, 598 (N.C. 1995). "Assignments are governed by the general principals of contract law, and 'provisions in bilateral contracts that forbid or restrict assignment of the contract without the consent of the obligor are generally valid and enforceable.'" *Parkersmith*

*Props. v. Johnson*, 525 S.E.2d 491, 495 (N.C. Ct. App. 2000) (quoting 6 Am. Jur. 2d *Assignments* § 21 (1999)) (some citations omitted). Neither STS nor this Court's survey of relevant caselaw has shown that North Carolina has adopted the Restatement approach. At least one state appellate court applying North Carolina law has come to the same conclusion. See *Dean*, 136 P.3d at 774-76. In so concluding, that Court held that "anti-assignment clauses in contracts are enforceable in North Carolina at the insistence of an obligor, and that an assignment without the obligor's consent is ineffective." *Id.* at 776. This Court agrees and finds no difference between a contractual prohibition of assignment and a contractual restriction on assignment. Therefore, the Court concludes that, under North Carolina law, where contractual language restricts or prohibits assignment, any assignment made contrary to that language is ineffective and void.

The Wilmington Agreement generally permits transfer of the Agreement by Cartridge World with the narrow restriction that the transferee must have sufficient resources to fulfill its obligations. (See Doc. No. 1-5 at 27; Doc. No. 25 at 2.) It provides, in relevant part:

> This Agreement, and any or all of our rights and/or obligations under it, are fully transferable by us in our Business Judgment, in whole or in part, without your consent, provided that any such transferee shall appear at the time of the transfer to have financial resources reasonably appropriate to fulfill its obligations under this Agreement.

(Doc. No. 1-5 at 27.) Defendants contend that, at the time Cartridge World assigned the Wilmington Agreement to STS, STS did not have "sufficient financial resources to fulfill its obligations under the agreement . . . ." (Doc. No. 25 at 3.) Because this Court finds that assignments made in violation of a contractual term restricting assignment renders the assignment void under North Carolina law, whether Plaintiff may enforce the arbitration clause

12

as a party to the Wilmington Agreement under 9 U.S.C. § 4,[7] turns on the validity of the assignment. This fact will affect the outcome of the proceedings. Therefore this fact is material.

Defendants, in support of their claim that STS did not have the financial resources necessary to fulfill their obligations under the Wilmington Agreement cite to materials purporting to demonstrate that at and around the time of the alleged assignment STS had negative equity (see Doc. No. 25-1; Doc. No. 25-3) as well as to an account statement displaying several overdraft charges (see Doc. No. 25-2). After drawing all reasonable inferences in favor of the Defendants as the nonmoving party, the Court finds that with respect to the validity of the assignment under the Wilmington Agreement "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, the dispute as to whether the assignment of the Wilmington Agreement to STS was valid and effective is also genuine, and a genuine dispute as to a material fact exists.

Finding a genuine dispute as to a material fact, the Court next addresses whether, despite this dispute, Defendants are estopped from challenging the validity of the assignment. Judicial estoppel is an equitable doctrine that prevents a party from asserting inconsistent claims or arguments in different legal proceedings or different phases of litigation. See *Mintze v. Am. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 232 (3d Cir. 2006); *Pegram v. Herdrich*, 530 U.S. 211, 228 n.8 (2000). "Its purpose is to protect the judicial process by preventing parties from 'deliberately changing positions according to the exigencies of the moment.'" *In re Armstrong World Indus. Inc.*, 432 F.3d 507, 517 (3d Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). The Third Circuit has held that "[t]hree requirements must be met before a

---

[7] Title 9 U.S.C. section 4 permits "[a] party aggrieved" by another's alleged failure, neglect, or refusal to arbitrate pursuant to an agreement that provides for arbitration to petition a United States district court for an order directing arbitration. (Emphasis added.)

13

district court may properly apply judicial estoppel." *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001).

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith--i.e., with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Id.* at 779-80 (quotation marks and citations omitted).

Plaintiff does not cite to, nor is this Court aware of, any prior legal proceedings related to this dispute. Therefore, Plaintiff has failed to show that Defendants have asserted inconsistent claims in different legal proceedings. Defendants' challenge to the validity of the assignment of the Wilmington Agreement to STS is not limited to Defendants' Responsive Concise Statement and Brief in Opposition. Defendants raised this issue in their Answer and Motion to Dismiss. (See Doc. No. 18 at 5; Doc. No. 7 at 2, n.1, 2-3.) Thus, Defendants also have not asserted inconsistent claims in different phases of this litigation. Additionally, Defendants assert that they obtained information demonstrating STS' financial difficulties through discovery. (Doc. No. 25 at 2.) This Court finds that Defendants' doing business with STS pursuant to an alleged assignment is not "irreconcilably inconsistent" with later challenging the validity of that assignment following the disclosure of financial information during discovery. Furthermore, there is insufficient evidence before the Court to conclude that any change in Defendants' position was done in bad faith. Therefore, the Court concludes that Defendants are not estopped from challenging the validity of the assignment.

Finally, the Court briefly addresses Plaintiff's assertion that this Court found that the assignment of the Wilmington Agreement was valid in its March 29, 2011 Memorandum and Order. (See Doc. No. 22 at 2 (citing Doc. No. 17).) In ruling on Defendants' Motion to Dismiss

14

(Doc. No. 7) this Court stated that "On March 30, 2006, Carolina Cartridges, Inc. assigned its franchise agreements to STS Refills, LLC . . . " and rejected Defendants' assertion that the assignment was invalid (Doc. No. 17 at 3, 4). In so doing, the Court did not inquire into or render an opinion on the validity of the alleged assignment. Rather, the Court stated the facts after accepting as true the allegations contained in Plaintiff's complaint. See *Phillips v. County of Allegheny*, 515 F.3d 224, 231(3d Cir. 2008) (stating standard for deciding a motion to dismiss pursuant to Fed R. Civ. Pro. 12(b)(3)). Therefore, Plaintiff's assertion that this issue has already been decided by this Court is incorrect.

In conclusion, the Court finds that there is a genuine dispute as to a material fact that is not barred by judicial estoppel and that has not previously been decided by this Court. Therefore, Plaintiff's motion for summary judgment with respect to the Wilmington Agreement is denied.

### B.     The Belleville Agreement

Finding a genuine dispute as to a material fact exists with respect to the Wilmington Agreement, this Court next turns its attention to the Belleville Agreement. Defendants do not challenge the existence of an agreement between Rivers Printing and STS with respect to the Belleville franchise location. (See Doc. No. 24 at 2). Thus, the Court begins with the legal standard for issuing an order compelling arbitration. "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "Absent language in the parties' agreement clearly providing otherwise, the arbitrability of a dispute is a question of law for the court to determine." *Gedid v. Huntington Nat'l Bank*, No. 11-1000, 2012 US Dist. LEXIS

27715, at *11 (E.D. Pa. Feb. 10, 2012) (citing *U.S. Small Bus. Admin. v. Chimicles*, 447 F.3d 207, 209 (3d Cir. 2006); *Gen. Elec. Co. v. Deutz AG*, 207 F.3d 144, 154 (3d Cir. 2001)). "For a court to compel arbitration, it initially must find that there is a valid agreement to arbitrate because the basis for contractual arbitration is consent, not coercion." *Century Indem. Co.*, 584 F.3d at 523 (3d Cir. 2009). Furthermore, because parties may agree to arbitrate some, but not all, disputes arising out of a contract or relationship, even where an agreement to arbitrate exits a court must also find that the parties have agreed to arbitrate the dispute or disputes in issue. *Id.*

When a valid agreement to arbitrate exists, "the determination of whether 'a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law.'" *Id.* at 524 (quoting *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003)). "When a dispute consists of several claims, the court must determine on an issue-by-issue basis whether a party bears a duty to arbitrate." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). "In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem. Co.*, 584 F.3d at 524 (quoting *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 650, (1986)).

Similar to the Wilmington Agreement, Defendants admit that the Belleville Agreement contains an arbitration clause. (See Doc. No. 24 at 2.) Therefore, the existence of an agreement to arbitrate is not in question and the Court turns to the question of whether the disputes at issue fall within the scope of the arbitration agreement. Plaintiff describes the nature of the disputes in its Complaint and Memorandum In Support of Motion for Summary Judgment. (See Doc. No. 1

at 5-6; Doc. No. 21 at 2.) Specifically, Plaintiff alleges that Defendants committed the following breaches of contract: (1) Defendants removed all Cartridge World signage, logos, uniforms, and other identifying items from the Belleville franchise location but continued to substantially operate as a Cartridge World store, (2) Defendants continued to utilize equipment and proprietary information provided by STS and/or Cartridge World after removing information identifying the Belleville franchise location as a Cartridge World store, (3) Defendants stopped remitting franchise fees to STS as required by the Belleville Agreement and (4) Defendants continued to use the Cartridge World brand or trademark in telephone directories and advertisements after having removed information identifying the Belleville franchise location as a Cartridge World store. (Doc. No. 1 at 5-6.) Plaintiff further sets forth the text of the Belleville Agreement regarding the scope of the disputes to be arbitrated in its CSMF with a citation to the record, as required by Local Rule 56.B.1. (See Doc. No. 22 at 2.)

Defendants, in their Responsive Concise Statement, state that the Agreement "is a thing which speaks for itself" and deny any attempt to interpret, construe, or modify the terms of the document. (Doc. No. 24 at 2.) However, beyond this, Defendants do not advance any specific arguments contending that or explaining how disputes between the parties fall outside the scope of the arbitration agreement, which, by its terms broadly includes "any litigation, claim, dispute, suit, action, controversy, or proceeding of any type whatsoever . . . between or involving you and us on whatever theory and/or facts based, and whether or not arising out of this Agreement . . . ."[8] (Doc. No. 1-8 at 41). Indeed, the "New Matter" in Defendants' Responsive Concise Statement is limited to issues related to the Wilmington Agreement. (See Doc. No. 24 at 3.) Each dispute identified by Plaintiff is a dispute between STS and Defendants relating to the operation of the Belleville franchise location, thereby satisfying the clause's requirement that

---

[8] See Section III above for the full text of this clause of the Belleville Agreement.

17

the dispute be "between or involving" STS and Defendants. Further, although the arbitration clause does not limit its breadth to disputes arising out of the Belleville Agreement, the type of disputes at issue appear to be of the precise nature that the clause appears to be designed to address: disputes between the parties related to the operation of a franchise pursuant to the franchise agreement. Therefore, in light of the arbitration clause's breadth, the fact that Defendants have not advanced any arguments as to whether or why the disputes at issue fall outside the scope of the arbitration clause, and the "presumption of arbitrability," see *Century Indem. Co.*, 584 F.3d at 524, Defendants have failed to demonstrate the existence of a genuine dispute as to the scope of the arbitration clause.

Defendants do challenge Plaintiff's assertion that personal guarantees of Thomas E. Rivers and Cathy Rivers accompanied the Belleville Agreement. (See Doc. No. 24 at 2.) Plaintiff, in support of its assertion, cites to pages 53-54 of Exhibit 2 to the Complaint (see Doc. No. 22 at 2), as required by Local Rule 56.B.1, which consist of an exhibit to the Belleville Agreement (hereinafter the "Belleville Exhibit") entitled "Continuing Personal Guarantee" (see Doc. No. 1-8 at 53-54). The "Continuing Personal Guarantee" is signed by "Tom Rivers" and "Cathy Rivers." (Doc. No. 1-8 at 54). A comparison between the text in the purported personal guarantee of the Belleville Agreement and the text of the corresponding exhibit in the Wilmington Agreement entitled "Owners Guarantee and Assumption of Corporate Franchisee's Obligations" (Doc. No. 1-5 at 54-55), which Defendants admit constitutes a personal guarantee of the Wilmington Agreement by Thomas E. Rivers and Cathy Rivers, (see Doc. No. 24 at 2) reveals only limited changes in phrasing. Defendants have not asserted that any of these changes affect the substance of the Belleville Exhibit nor have they explained how any of these changes may affect the substance of the Belleville Exhibit. Additionally, although Defendants have

18

supplemented their denial of Plaintiff's assertion that a personal guarantee accompanied the Belleville Agreement with a citation to a pleading, (specifically, the Answer) (see Doc. No. 24 at 2) as required by Local Rule 56.C.1.b, Defendants have failed to set forth a basis for the denial in both their Responsive Concise Statement and the Answer to which they cite (see Doc. No. 24 at 2; Doc. No. 18 at 3), as is also required by Local Rule 56.C.1.b. Because a party opposing summary judgment must set forth more than a mere denial of the pleading to create a genuine issue as to any material fact, *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001); see also Local Rule 56.C.1.b., the Court finds Defendants have also failed to demonstrate the existence of a genuine dispute as to the existence of a personal guarantee of the Belleville Agreement by Thomas E. Rivers and Cathy Rivers. Therefore, Defendants have failed to demonstrate that a genuine dispute as to an issue of material fact exists with respect to the Belleville Agreement and Plaintiff's motion for summary judgment with respect to the Belleville Agreement is granted.

## VI. CONCLUSION

For the reasons stated above, Defendants have demonstrated that a genuine dispute of material fact exists as to whether the assignment of the Wilmington Agreement to STS was valid and effective, and therefore whether Plaintiff may enforce the arbitration clause of the Wilmington Agreement under 9 U.S.C. § 4. However, Defendants have failed to demonstrate the existence of a genuine dispute as to a material fact with respect to the scope of the arbitration clause in the Belleville Agreement or the existence of a personal guarantee of the Belleville Agreement by Thomas E. Rivers and Cathy Rivers. Accordingly, the Court will **DENY** Plaintiff's Motion for Summary Judgment with respect to the Wilmington Agreement and **GRANT** Plaintiff's Motion for Summary Judgment with respect to the Belleville Agreement. An appropriate order follows.

19

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STS REFILLS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:10-CV-43 |
| ) | JUDGE KIM R. GIBSON |
| RIVERS PRINTING SOLUTIONS, INC., ) | |
| THOMAS E. RIVERS, and ) | |
| CATHY RIVERS, ) | |
| ) | |
| Defendants. ) | |

## ORDER

AND NOW, this 13th day of September, 2012, in accordance with the Memorandum, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment (Doc. No. 20) filed by Plaintiff STS Refills, LLC is **GRANTED IN PART AND DENIED IN PART**. STS Refills, LLC is directed to file a demand for arbitration for disputes related to the Belleville Agreement with Franchise Arbitration and Mediation Services (FAM) within ten (10) days hereof. The parties are ORDERED to pay the costs of such arbitration as provided by FAM Arbitration Guidelines, effective May 17, 2011.

BY THE COURT:

_____
KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE