# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STS REFILLS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 3:10-43 |
| v. | ) |
| | ) JUDGE KIM R. GIBSON |
| RIVERS PRINTING SOLUTIONS, | ) |
| INC., THOMAS E. RIVERS, and | ) |
| CATHY RIVERS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

**I.     SYNOPSIS**

Before the Court are Defendants' motion to vacate the arbitration award (ECF No. 41) and Plaintiff's motion to confirm the arbitration award (ECF No. 44). Defendants contend that the arbitration award must be vacated because the arbitrator failed to render an award within the timeline provided in the Franchise Arbitration and Mediation Services Guidelines. Plaintiff asserts that the delay did not prejudice Defendants and that the award must be confirmed. For the reasons set forth below, Defendants' motion to vacate will be **DENIED** and Plaintiff's motion to confirm will be **GRANTED**.

**II.    JURSIDICTION AND VENUE**

The Court has jurisdiction in this diversity case under 28 U.S.C. § 1332(a)(1). Venue is proper under 28 U.S.C. § 1391(a)(2) and (b).[1]

---

[1] The Court previously addressed, at length, jurisdiction and venue issues in this case. *See* ECF No. 17 and ECF No. 26 at 1-4.

## III. BACKGROUND

Plaintiff is a company that grants and manages franchises for Cartridge World, a chain retail establishment. (ECF No. 1 ¶¶ 9-11). Defendants operated two Cartridge World retail stores under two separate franchise agreements with Plaintiff: (1) a store in Wilmington, North Carolina; and (2) a store in Belleville, North Carolina. (Id. ¶¶ 12-13). The pending motions in this case involve only the Belleville franchise agreement, which the parties executed on November 14, 2007. (ECF No. 41 ¶ 4; ECF No. 41-1).

According to Plaintiff, beginning in 2009, Defendants "began a pattern of failing to fulfill many of their obligations" under the franchise agreements, which constituted "substantial breaches" of both franchise agreements. (ECF No. 1 at 2; ¶ 19). The Belleville Agreement includes a dispute resolution provision, permitting, among other things, that disputes may be submitted to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. (Id. ¶¶ 21, 28).

In an effort to resolve the dispute that arose out of Defendants' alleged breach of the Belleville Agreement, Plaintiff filed a complaint to compel arbitration on February 10, 2010. (ECF No. 1). On April 20, 2010, Defendants filed a motion to dismiss (ECF No. 7) the complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), which the Court denied on March 29, 2011 (ECF No. 17). Defendants then filed an answer (ECF No. 18) to the complaint on April 12, 2011, after which the parties conducted discovery.

On January 5, 2012, Plaintiff filed a motion for summary judgment, asking the Court for an order compelling arbitration under both franchise agreements. (ECF No. 20). On September 13, 2012, the Court entered an order granting the motion in part and

2

denying the motion in part. (ECF No. 26). Relevant to the instant motions, the Court ordered the parties to arbitrate the dispute related to the Belleville Agreement. (*Id.* at 20).[2]

On March 26, 2013, Franchise Arbitration and Mediation Services ("FAM") conducted arbitration between the parties concerning the dispute under the Belleville Agreement. (ECF No. 41 ¶¶ 8, 9). Both parties filed post arbitration briefs by April 25, 2013, the deadline set by the arbitrator. (*Id.* ¶¶ 11, 12). The arbitrator issued a final invoice of fees on April 23, 2013, which the parties timely paid. (ECF No. 41-5)

On June 18, 2013, Defendants sent a letter to the arbitrator and to FAM objecting to any continuance of the arbitration. (ECF No. 41-6). The arbitrator responded that day, indicating that the delay was due to the need to conduct additional research, and that the award would be "finalized and submitted to the parties this week." (ECF No. 41-7). The arbitrator entered an award on June 19, 2013, in favor of Plaintiff and against Defendants. (ECF No. 46-1). The parties received the award on June 24, 2013. (ECF No. 41 ¶ 23).

On July 15, 2013, Defendants filed a motion to vacate the arbitration award (ECF No. 41), and a brief in support on August 14, 2013 (ECF No. 46). Plaintiff filed a motion to confirm the arbitration award (ECF No. 44) on August 13, 2013, along with a brief in support (ECF No. 45). The parties have fully briefed the Court, and this issue is ripe for disposition.

---

[2] The Court also found that there were remaining disputed facts concerning the validity of the Wilmington Agreement, which precluded summary judgment on that issue. (ECF No. 26 at 19). On June 17, 2013, the Court held a bench trial to determine the limited issue of whether Defendants must proceed to arbitration on matters related to the Wilmington Agreement. (ECF No. 34 at 3). On July 19, 2013, the Court entered an order finding that the Wilmington Agreement was binding on the parties and ordered the parties to submit to a separate arbitration regarding the dispute under that agreement. (ECF No. 43).

## IV.     STANDARD OF REVIEW

The FAA provides that a district court may, upon application of a party, confirm or vacate an arbitration award.  9 U.S.C. §§ 9-10.  The FAA sets forth limited circumstances under which the Court may vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see also New Jersey Reg'l Council of Carpenters v. Jayeff Const. Corp.*, 495 F. App'x 230, 232-33 (3d Cir. 2012).  "The standard of review of an arbitration award is limited to consideration of these statutory factors, and the scope of review is exceedingly narrow."  *Forest Elec. Corp. v. HCB Contractors*, No. 91-cv-1732, 1995 WL 37586, at *1-2 (E.D. Pa. Jan. 30, 1995); *see also Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (finding § 10 provides the exclusive grounds for vacating an arbitration award).

The FAA creates a strong presumption in favor of enforcing arbitration awards. *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005).  The Court's review of the arbitrator's award is highly deferential.  *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003).

4

## V. DISCUSSION

### A. Defendants' Motion to Vacate the Award

The principal issue now before the Court is whether the arbitrator's delay in rendering the arbitration award constitutes grounds to vacate under 9 U.S.C. § 10. Defendants contend that the award must be vacated, claiming that the award was "beyond the required time and Rivers has been prejudiced by the late award." (ECF No. 41 ¶ 24). Defendants argue that, under the FAM Guidelines, the arbitrator is required to send a final invoice of fees immediately after preparing an award, but not more than 20 days after the conclusion of arbitration; the parties must then pay the invoice within 5 business days; after which the award must be immediately transmitted by overnight courier. (*Id.* ¶¶ 13-14, citing FAM Guideline 11.1).

According to Defendants, the parties submitted their post arbitration briefs on April 25, 2013, "meaning that at the latest, the arbitration award was to be made and invoice transmitted within 20 days by May 15, 2013." (*Id.* ¶ 15). Defendants assert that Defendants received the arbitrator's final invoice on April 26, 2013; that Defendants timely paid the invoice on May 2, 2013; and that the arbitration award should therefore have been transmitted by overnight courier on May 3, 2013. (*Id.* ¶¶ 16-18). But the arbitrator did not meet this deadline. Defendants sent a letter to the arbitrator on June 18, 2013, objecting to any continuance of the arbitration. (*Id.* ¶ 20). Defendants did not receive the award until June 24, 2013. (*Id.* ¶ 23).

Thus, Defendants' sole basis for the motion to vacate is the arbitrator's approximately seven-week delay[3] in issuing the award. Defendants assert their claim under § 10(a)(4) of the FAA, explaining, "An arbitration award must be made within the time fixed by the agreement between the parties and may be vacated where 'the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter was not made.'" (ECF No. 46 at 2, quoting 9 U.S.C. § 10(a)(4)).

Courts have consistently recognized that "[a]rbitration is a creature of contract." *Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 350 (3d Cir. 1997). Thus, where the parties have entered an agreement to arbitrate, they may "specify by contract the rules under which . . . arbitration will be conducted." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford*, 489 U.S. 468, 479 (1989)). The parties to a contract may specify the powers of an arbitrator by incorporating the rules of an arbitration association into their agreement, and the parties are bound by those rules. *Way Services, Inc. v. Adecco North America, LLC*, No. 06-cv-2109, 2007 WL 1775393, at *3 (E.D. Pa. 2007). Thus, a party seeking to vacate an award must demonstrate that the arbitrator acted in excess of the authority granted by the arbitration agreement. *See Dluhos*, 321 F.3d at 370; *Mastrobuono*, 514 U.S. at 57; *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012).

---

[3] Defendants calculate May 3, 2013, as the appropriate deadline for the award. Defendants received the award on June 24, 2013. Thus, the time lapse was approximately seven weeks.

Here, the parties arbitrated the dispute pursuant to the FAM Guidelines, as required by the Belleville Franchise Agreement. (ECF No. 1-5 at 18-19). Section 11.1 of the FAM Guidelines governs the time requirements for arbitration proceedings:

> **11.1 Arbitrator's Final Invoice**
> The arbitrator should send his or her final invoice for the arbitrator's hourly services and costs as soon as the arbitrator has prepared the written decision (this should be not later than 20 business days after conclusion of the arbitration). The disputing parties have five business days in which to pay the final invoice. After receipt of final payment from the parties for the arbitrator's services, a written award, signed by the arbitrator, should be sent to the parties in dispute by reliable overnight courier. No decision or summary will be released to the parties in dispute until all fees for the arbitrator's services and related costs have been paid in full.

(ECF No. 41-3 at 12).

Nevertheless, even though the FAM Guidelines provide a clear timetable for issuing an award, § 7.9 of the Guidelines grants the arbitrator "considerable discretion in controlling the nature of the proceedings, including any continuance." (*Id.* at 10). Further, § 7.11 provides that "it will be in the arbitrator's discretion to determine when the proceedings are closed." (*Id.*). Likewise, § 7.12 grants the arbitrator "reasonable discretion" to modify applicable time limits "if the arbitrator decides that it is necessary to do so in order for the arbitrator to fulfill his or her responsibilities." (*Id.*).

The language in § 11.1, concerning the date by which the arbitrator should submit the award, is a "directory" rather than a "mandatory" provision. *See Local Union 560 v. Anchor Motor Freight, Inc.*, 415 F.2d 220, 225 (3d Cir. 1969) (distinguishing "directory" language from "mandatory" language regarding deadlines for the submission of an

arbitration award). By using the word "should," the FAM Guidelines provide a suggested schedule rather than a mandatory deadline for the arbitration proceedings.

The parties could have modified the FAM Guidelines within the Belleville Agreement by replacing the directory language in the Guidelines with mandatory language. However, the parties agreed to conduct arbitration in accordance with the FAM Guidelines and did not modify the Guidelines. As such, the FAM Guidelines' directory language controls the arbitrator's duty to render a timely award, and no mandatory deadline is imposed such that the arbitrator would "exceed his powers" if he delayed issuing the award. *See Local Union 650*, 415 F.2d at 224-25; *Local 272, Int'l Bhd. of Elec. Workers, AFL-CIO v. Pennsylvania Power Co.*, 645 F. Supp. 138, 139 (W.D. Pa. 1986).

Furthermore, § 7.12 of the FAM Guidelines grants the arbitrator reasonable discretion to extend time limits as necessary for the arbitrator to fulfill his responsibilities. (ECF No. 41-3 at 10). Indeed, § 7.9 of the FAM Guidelines provides the arbitrator with "considerable authority in controlling the nature of the proceedings, including any continuance." (*Id.*). Here, when Defendants objected to any further delay, the arbitrator explained that the delay was necessary to conduct further research and analysis. (ECF No. 41-7).

Because the applicable rules of arbitration in this case provided the arbitrator with considerable discretion to conduct the arbitration, including determining applicable deadlines and continuances, the Court cannot now second guess the arbitrator's decision and assert its own opinion about the timeliness of the arbitrator's award.

Accordingly, the arbitrator did not exceed his authority by delaying the award. Under the agreement between the parties, which incorporated the FAM Guidelines, the arbitrator possessed considerable discretion in conducting the arbitration process. The arbitrator clearly stated that the delay was necessary to conduct additional research and analysis. (ECF No. 41-7). The arbitrator's delay was a reasonable exercise of his discretion and does not violate § 10(a)(4) of the FAA. Further, Defendants have not presented any evidence that they were prejudiced by the arbitrator's delay. Therefore, the Court will not vacate the award.

### B.     Plaintiff's Motion to Confirm the Award

Plaintiff has filed a cross-motion asking the Court to confirm the arbitration award pursuant to § 9 of the FAA. Plaintiff's motion will be granted because the motion satisfies the requirements of § 9, and the award has not been vacated, modified, or corrected in accordance with §§ 10 or 11 of the FAA.

## VI.    CONCLUSION

For the reasons explained above, the Court will **DENY** Defendants' motion to vacate the arbitration award, and will **GRANT** Plaintiff's motion to confirm the award. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STS REFILLS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 3:10-43 |
| v. | ) |
| | ) JUDGE KIM R. GIBSON |
| RIVERS PRINTING SOLUTIONS, | ) |
| INC., THOMAS E. RIVERS, and | ) |
| CATHY RIVERS, | ) |
| | ) |
| Defendants. | ) |

## ORDER

**AND NOW**, this 27th day of March, 2014, for the reasons stated in the foregoing memorandum, **IT IS HEREBY ORDERED** that Defendants Rivers Printing Solutions, Inc., Thomas E. Rivers, and Cathy Rivers' motion to vacate (ECF No. 41) the arbitration award is **DENIED**, and Plaintiff STS Refills, LLC's motion to confirm (ECF No. 44) the arbitration award is **GRANTED**; and

**IT IS FURTHER ORDERED** that the arbitration award dated June 19, 2013, and docketed at FAM Case No. 12A09019, is **CONFIRMED** as written and judgment is to be entered in accordance with that award.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE